### C. L. MOODY v. WILLIAM ZIMMERMAN.

(Filed 13 October, 1954.)

**Automobiles § 18h (3)—**

Defendant's disabled automobile was standing obliquely on his right of the highway with its left rear bumper some distance over the center line. Plaintiff's own testimony was to the effect that he observed defendant's car some 500 feet ahead of him on the highway, with its headlights shining, but that he drove on and collided with the left side of the car, notwithstanding his wife was telling him that the car was over on his side of the road, and although he had room to pass on the shoulder to his right, or could have stopped at any point along the highway before hitting the car. *Held:* Plaintiff's own testimony discloses contributory negligence barring recovery as a matter of law.

APPEAL by defendant from *Bone, J.,* at March Civil Term, 1954, of VANCE.

MOODY *v.* ZIMMERMAN.

Civil action in tort arising out of a collision of two motor vehicles, one of which was standing disabled on the highway.

The collision occurred at about 9:30 o'clock p.m., 4 July, 1951, on State Highway No. 158 about two miles east of Roxboro. The defendant, who operated a garage, was road-testing a 1949 Ford automobile he had repaired. He had just turned around at a side road near the bottom of a hill and had started back up the hill when the motor failed and the car stopped in its right-hand traffic lane. The defendant, in an attempt to get off the highway by letting the car roll back downhill to the side road, let the car roll backward about a car length, where it was stopped on the traveled portion of the highway as the plaintiff, driving his Chevrolet automobile, came over the crest of the hill and proceeded on down and collided with the disabled car. The plaintiff was not injured, but his car was damaged.

The plaintiff testified in pertinent part: ". . . after I reached the crest of the hill I saw the headlights of a car approximately 500 feet ahead of me; . . . I dimmed my lights and started on down the hill . . . the lights on the other car did not change so I dimmed my lights again and began to slow down. I proceeded on down the hill and still the lights on the other car did not dim, and I figured that the other automobile was too close over to me, and about 100 feet before I got to the car I dropped on to the shoulder of the road with my right-hand wheels and continued to slow down and give the other car room to pass. When I got down to where the beam of the headlights went out of my eyes I saw the car operated by the defendant Zimmerman was definitely on my side of the road. Q. Up to that time had the beam of the headlights been in your eyes? A. Yes. Then I applied my brakes and attempted to stop, and passed the front end of the car, and my left front fender struck the edge of the cowl and threw me off the hill and turned me over; . . . I flickered my lights several times in an effort to get the other man to dim his lights which he did not do, and I was slowing my car down all the time during the process. . . . After the collision my wife crawled out of the car first and just as she got out Mr. Zimmerman . . . came down the bank and . . . asked her if she was hurt. . . . he said, 'Lady, I am just as sorry as I can be, it was all my fault.' . . ." On cross-examination the plaintiff stated that he had traveled this highway for years and was familiar with it; that he did not see Preston Stanfield, a companion of the defendant, standing in front of the disabled car signaling; that he did not see the headlights on the disabled car "going up and down"; that he did not drive down the hill astraddle the white center line. The cross-examination of the plaintiff terminated with these admissions: "Q. Mr. Moody, could you have stopped your car at any point on the road from where you came over the hill to where you hit the car? A. Sure. Q. Were your brakes in good

condition? A. Yes. Q. You made no endeavor to stop it? A. No."
Redirect-examination: "I did not come to a stop because I was trying to
get far enough to the right to get by without hitting the defendant's car."

Mrs. C. L. Moody testified in pertinent part: ". . . when we passed the
beam of the lights we saw the other car was so far over we did not have
room to get by and he mashed on the brakes and hit the front door of the
defendant's car and went down the bank and turned over. . . . Mr.
Moody was traveling about 40 miles an hour when he came over the crest
of the hill. . . ." Cross-examination: ". . . I told him (the plaintiff) to
look out; that he (the defendant) was over on our side." Redirect exam-
ination: "I told him this when we were coming down the hill and he was
touching his brakes and he was commencing to get over on the shoulder
of the road."

Clarence Moody testified that he went to the scene of this wreck. He
said: ". . . The Zimmerman car was damaged just in the front of the
front door on the left side. I did not notice any dent from the door on
back. His damage was all on the side of the car."

The defendant offered evidence in summary as follows: that the high-
way was paved with black top material about 18 feet wide, with a six-foot
shoulder on the plaintiff's side and with a white center line all the way
up the hill; that the highway was straight from where the plaintiff came
over the hill to where the collision occurred; that the defendant's car was
standing still when the plaintiff's headlights came over the hillcrest; that
the disabled car was on its right-hand side of the highway "with just a·
part of the rear bumper over the center line 5 or 6 inches." In rolling
back the car length it had stopped in that position, at an angle across the
highway "with lights shining toward the bank." As the plaintiff's car
approached, the defendant kept blinking his headlights "up and down,"
and one of his companions was out in front of the car "waving his hands"
in the beams of the headlights; that the plaintiff came down the hill
astraddle the center line, and immediately before the impact swerved to
his right and then "hung into the middle" of the disabled car, striking it
on the left side at the cowl, near the front door.

Patrolman Hudgins, who investigated the wreck, testified in part:
". . . My report shows that Mr. Zimmerman's car was parked diagonally
across the highway. . . . the shoulder of the road at the point of impact
on Mr. Moody's side was wide enough for a car to park. I parked my car
there without being on the hard surface road. . . . If Mr. Zimmerman's
left rear wheel was setting on the white line that would have left nine
feet to his left of the hard surfaced part of the highway available to the
traveling public clear. Including the shoulder that was six feet wide
there would have been a clearance of 15 feet from the center of the road
including the shoulder in the direction that Mr. Moody was traveling."

Issues of negligence, contributory negligence, and damages were submitted to the jury and answered in favor of the plaintiff.

From judgment on the verdict awarding the plaintiff $700 in damages, the defendant appealed, assigning as error the refusal of the trial court to allow his motion for judgment as of nonsuit made in apt time.

*Blackburn & Blackburn and Gholson & Gholson for plaintiff, appellee.*
*Melvin H. Burke for defendant, appellant.*

JOHNSON, J.   Here it appears from the plaintiff's own evidence that after he observed the disabled car some 500 feet ahead of him in the main traveled portion of the highway, with headlights shining and with no other obstruction in the highway, he drove on, with his wife telling him the disabled car was on his side of the road, and collided with the side of it, when admittedly he could have stopped his car at any point along the highway before hitting the other car.  It is manifest, as the only reasonable inference deducible from the plaintiff's evidence, that he failed to exercise due care for his own safety and that such failure to exercise due care contributed to, and was a proximate cause of, his damage.  This defeats recovery.  The case is controlled by the principles explained and applied in *Morris v. Transport Co.,* 235 N.C. 568, 70 S.E. 2d 845, and cases there cited.

The judgment below is
Reversed.